UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JON ALAN LAPORTE, JR.,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

_____/

Case No. 2:20-cv-12672
District Judge Terrence G. Berg
Magistrate Judge Anthony P. Patti

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 13), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 14) and AFFIRM THE COMMISSIONER'S DECISION**

**I.**      **RECOMMENDATION**:  For the reasons that follow, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 13), **GRANT** Defendant's motion for summary judgment (ECF No. 14), and **AFFIRM** the Commissioner's decision.

**II.**      **REPORT**

      Plaintiff Jon Alan Laporte, Jr. brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security

(Commissioner) denying his applications for Child's Insurance benefits (CIB)[1] and Disability Insurance (DI) benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 13), the Commissioner's cross-motion for summary judgment (ECF No. 14), and the administrative record (ECF No. 9).

### A.     Background and Administrative History

In his September 2018[2] applications for CIB and disability insurance benefits (DIB), Plaintiff alleges his disability began on September 1, 1991, when he was hit by a car and suffered a traumatic brain injury (TBI), at the age of four. (ECF No. 9, PageID.272-273, 276-277.) In his disability report, he lists brain injury from childhood, seizures, back pain, and short-term memory loss as limiting his ability to work. (ECF No. 9, PageID.304.) His applications were denied on April 24, 2019. (ECF No. 9, PageID.176-193.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ). (ECF No. 9, PageID.194-195.) On January 31, 2020, ALJ Christopher Mattia held a hearing, at which Plaintiff, Plaintiff's mother, and a vocational expert (VE), Mark

---

[1] An individual may be entitled to child's benefits if he or she is at least 18 years old and has a disability that began before the age of 22. 20 C.F.R. § 404.350(a)(5); *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 362 n.1 (6th Cir. 2014).

[2] In his decision, the ALJ states that Plaintiff filed his CIB application on July 12, 2018 (ECF No. 9, PageID.43), but I do not see that date in the record. Any discrepancy, however, has no effect on this Report and Recommendation.

2

Richards, testified. (ECF No. 9, PageID.63-101.) ALJ Mattia issued his opinion on March 31, 2020, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (ECF No. 9, PageID.40-62.)

Plaintiff submitted a request for review of the hearing decision/order. (ECF No. 9, PageID.268-270.) However, on September 1, 2020, the Appeals Council denied Plaintiff's request for review. (ECF No. 9, PageID.32-37.) Thus, ALJ Mattia's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on September 30, 2020. (ECF No. 1.)

### B. Plaintiff's Medical History

The administrative record, accurately depicted by the Commissioner as "sparse" (ECF No. 14, PageID.476), contains approximately 88 pages of medical records, which were available to the ALJ at the time of his March 31, 2020 decision. (ECF No. 9, PageID.359-447 [Exhibits 1F-8F].) These materials will be discussed in detail, as necessary, below.

### C. The Administrative Decision

Pursuant to 20 C.F.R. § 404.1520(a)(4),[3] at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial

---

[3] To assess whether a claimant is entitled to CIB, the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520(a)(4) is used. 20 C.F.R. § 404.1520(a)(1)-(2).

gainful activity since September 1, 1991, his alleged onset date. (ECF No. 9, PageID.45-46.) At **Step 2**, the ALJ found that prior to attaining age 22, and through September 30, 2018, his date last insured (DLI), Plaintiff had the following severe impairments: traumatic brain injury, seizures, bipolar disorder, mild neurocognitive disorder, and borderline intellectual functioning. (ECF No. 9, PageID.46.) At **Step 3**, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (ECF No. 9, PageID.46-49.) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[4] and determined that prior to age 22 and through the DLI, Plaintiff had the RFC:

> to perform light work . . . except: he can lift and carry 10 pounds frequently and 20 pounds occasionally; stand or walk for 4 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; push or pull within the aforementioned weight restrictions; occasionally operate foot controls with the left lower extremity; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; never climb ladders, ropes, or scaffolds; occasionally have exposure to extreme cold, wetness, or vibration; never have exposure to unprotected heights, moving mechanical parts, or open flames; never drive as a work duty; perform work that does not require more than occasional talking; make simple work-related decisions; attend and concentrate sufficiently to carry out simple instructions; and perform work in

---

[4] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

> which the pace is not set by an external source over which he has no control such as assembly line work.

(ECF No. 9, PageID.49-56.) At **Step 4**, the ALJ determined that Plaintiff did not have past relevant work. (ECF No. 9, PageID.57.) At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as router, photocopying machine operator, and marker. (ECF No. 9, PageID.57-58.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time prior to December 10, 2008, the date he attained age 22, or at any time from September 1, 1991, the alleged onset date, through September 30, 2018, the DLI. (ECF No. 9, PageID.58.)

### D.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under

5

this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the

6

merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

E.  **Analysis**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ's hypothetical question to the VE[5] did not include the limitation that he be monitored twenty-four hours per day as a result of the TBI, which would have been work preclusive. (ECF No. 13, PageID.461-463.)[6] The Commissioner opposes Plaintiff's motion, arguing that substantial evidence supports the ALJ's RFC determination. (ECF No. 14, PageID.467, 477-480.)

1.  **RFC determination**

The Plaintiff bears the burden of proof at Steps 1-4, including proving his RFC. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health*

---

[5] To the extent Plaintiff frames his summary judgment motion as a challenge to the ALJ's Step 5 determination, he is actually challenging the RFC determination. *See Kirchner v. Colvin*, No. 12-cv-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.").

[6] Among other deficiencies, which will be discussed further herein, Plaintiff's brief appears to violate E.D. Mich. Local Rule 5.1(a)(3), which requires 14-point font (proportional) or 10 and-a-half characters per inch (non-proportional) for papers filed with the Court.

*and Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity."). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform[.]" *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

Plaintiff's RFC is "the most [he] can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence. 20 C.F.R. § 404.1527(d)(2). Pursuant to Social Security Rule (SSR) 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7. "The ALJ need not decide or discuss uncontested issues, 'the ALJ need only articulate how the evidence in the record

8

supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002) (citation omitted).

> **2. The Court should find that Plaintiff has failed to meet his burden of establishing entitlement to a more restrictive RFC, and deny his motion for summary judgment**

For the reasons that follow, the Court should find that Plaintiff has failed to meet his burden of establishing entitlement to a more restrictive RFC.

First, it is not entirely clear whether Plaintiff wishes to challenge the ALJ's decisions on both his CIB and DIB applications, or his CIB application alone, as the brief only specifically references the former. (See ECF No. 13, PageID.458.) To err on the side of caution, I will proceed as if he is appealing both decisions.

A review of the administrative record confirms Plaintiff's TBI from being hit by a car as a child, and does reveal notations from some of Plaintiff's medical providers that he required constant supervision, both before the age of 22 and after. In 2006, at the age of 19, Plaintiff received a comprehensive evaluation at Mary Free Bed Rehabilitation Hospital, and Attending Andrea S. Kuldanek noted: "Jon currently requires adult supervision at all times to provide structure and to maintain safety. He requires a responsible adult in-home overnight. This is not expected to change with maturity." (ECF No. 9, PageID.390.) Plaintiff's counsel referenced

9

this evidence in the summary judgment motion, but cited to the page numbers contained in the upper right hand corner of the transcript throughout the motion, rather than the transcript pages below or the PageID (which is the appropriate citation method, per E.D. Mich. Electronic Filing Rule 6), and provided no explanation, context or timeframe for the statement, stating only:

> The traumatic childhood brain injury resulted in Plaintiff requiring 24 hour/seven days a week monitoring due to safety concerns related to Plaintiff as well as members of the general public and inability to complete a task (TR 363)[.]
>
> * * *
>
> Plaintiff's condition began prior to being 18 years of age and was never expected to change with maturity.  (TR 363)[.]
>
> * * *
>
> The traumatic childhood brain injury resulted in Plaintiff requiring 24 hour/seven days a week monitoring due to safety concerns related to Plaintiff as well as members of the general public and inability to complete a task (TR 363)  There is no medically documented evidence that Plaintiff's condition as it relates to his TBI ever improved or that his need for continuous supervision ever changed. Plaintiff has not changed from childhood to adulthood and is not expected to change.  (TR 362-363)[.]

(ECF No. 13, PageID.459-460.)

Plaintiff's primary care provider Dr. David A. Wiersema also noted the need for constant supervision throughout March 2015 to March 2018, after Plaintiff attained the age of 22.  For example, in December 2016, he wrote that Plaintiff "will continue to require 24-hour supervision."  (ECF No. 9, PageID.410.)  And in

March 2018, Dr. Wiersema stated that Plaintiff would "continue to require supervision." (ECF No. 9, PageID.419.)

Curiously, it is Defendant who alerted the Court to this relevant evidence (ECF No. 14, PageID.469-473), not Plaintiff's counsel. Plaintiff's eight-page summary judgment motion does not mention Dr. Wiersema or his statements at all.[7] Instead, Plaintiff cites the note by State agency non-examining psychological consultant Dr. David Hill which simply references the medical evidence of record that he needs constant supervision, stating:

> Even the government's independent evaluators agree that Plaintiff is incapable of unsupervised functioning in any realm. The current regional psychological contractor review of March 5, 2019, authored by Dr. David Hill, notes that Medical Evidence of Record [MER] documents the claimant requires "24 hour supervision" due to chronic effects of the TBI and appears to require considerable support and supervision and further that MER indicates the claimant performed supportive employment only with the assistance of a caseworker. Dr. Hill does not reject this evidence. (TR404-407) The April 8, 2019 neurological psychological evaluation order[ed] by the government determined that Plaintiff, although very cooperative, positive and enthusiastic, [ ] had inappropriate interaction/behavioral issues with the prognosis for improved psychological and adaptive functioning being poor. (TR 413)[.]

(ECF No. 13, PageID.460-461.)

Dr. Hill did not, however, "agree that Plaintiff is incapable of unsupervised functioning." (ECF No. 13, PageID.460.) As the ALJ pointed out in his decision

---

[7] This may be further evidence that Plaintiff intends to appeal the CIB decision only, as Dr. Wiersema's records are from well after Plaintiff reached the age of 22.

11

(ECF No. 9, PageID.55), Dr. Hill stated that the MER was "insufficient to assess" ongoing mental and cognitive work-related functioning (ECF No. 9, PageID.432), a statement Plaintiff's counsel conveniently omitted from the summary judgment motion, and with which the ALJ disagreed (ECF No. 9, PageID.55).[8] And psychological consultative examiner Nancy Gardner's opinion, which Plaintiff also referenced above and which the ALJ found persuasive (ECF No. 9, PageID.56), does not indicate that Plaintiff requires twenty-four hour supervision (*see* ECF No. 9, PageID.436-447).

Further, the ALJ recounted Plaintiff's claim of the need for constant supervision (ECF No. 9, PageID.50), and although he did not explicitly include the notations regarding the need for twenty-four hour supervision, thoroughly addressed the medical records from the Mary Free Bed Hospital Pediatric Brain Injury Program and Dr. Wiersema in his RFC assessment, stating, in part:

> On June 5, 2006, when the claimant was 19 years old, he underwent a comprehensive visit at PBIP, with his mother, Ms. Terri Laporte and his case manager, Mr. Carl McCormick in attendance (2F/7).

---

[8] The ALJ's full quote reads:

> MER and other evidence indicates that the claimant may have a Mild Neurocognitive Disorder that limits his ability to perform work functioning on a consistent basis and may limit his ability to live in the community independently. MER is insufficient to assess his ongoing mental and cognitive work related functioning.

(ECF No. 9, PageID.423.)

* * *

The assessment included that he was independent in all basic areas of self-care, could cook when someone was supervising, and he used local transit system for transportation, but needed structure to stay organized (2F/11). The notes documented that the claimant was participating in a supervised work program due to his TBI, continued exhibiting impulsive and disinhibited behaviors, and he was hyperverbal (2F/8). However, the notes also indicated that he participated in social activities at the rehabilitation center, played golf once a week, enjoyed recreational camping every weekend, rode his bike regularly for transportation; worked out 2 times a week; and was working 4 hours daily for 5 days a week at the rehabilitation center doing maintenance work (e.g., stocking, yard work, general repairs, etc.) (2F/8, 10, 11). Due to the claimant becoming an adult, he graduated/discharged from the Pediatric Brain Injury Program but required ongoing physical medicine rehabilitation management (2F/12).

From March 17, 2015 to March 20, 2018, the claimant received roughly semi-annually, health care from his primary care physical (PCP), Dr. David A. Wiersema, D.O. (3F). The claimant's reported activities during this period included: assisting with home remodeling, working making deer blinds but it went out of business, bowling in a league, playing pool at the bar, walking his dog about two miles a day and walking did not aggravate his back pain, using an adult coloring book, riding his bike in warm weather for 3-10 miles, and camping with his family (3F/2, 5, 8, 11, 14, 17, 20). The 2015 office visits documented that the claimant was doing very well (including when he was working) (3F/3, 6). The 2016 notes revealed that the claimant was "currently not in any therapies" and his mood stable (3F/8). The 2017 office visits noted he was doing well, was very active, had been living out of the camper during the summer, had been doing memory/strategy games on his iPad, and the cream for back pain was working well (3F/17, 18, 19). The March 2018 office visit documented that he had received a pen for bowling a 500 series, had a business sponsor for his bowling, was doing a lot of yard work and spending time up north, and although he had some lower back tenderness, it was not so bad that it kept him from doing activities

> (3F/20). Dr. Wiersema's diagnoses included TBI and dysarthria; however, on March 20, 2018; [sic] the PCP noted that the claimant did not demonstrate dysarthria (3F). The PCP examinations generally showed he was friendly, cooperative, and well dressed; alert and oriented; able to recall past information; and able to do serial sevens and problem solve (3F/3, 6, 9, 12, 15, 18, 21). The exams also showed some mildly dysarthric speech, insight somewhat limited; difficulty spelling "world" backwards; and limited fund of knowledge (3F/3, 6, 9, 12, 18, 21). However, one of the 2017 exams showed his attention was intact; and the 2018 exam showed his speech was fluid and no dysarthria (3F/15, 21).
>
> * * *
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent with the overall record. The claimant alleged that his brain injury from childhood, seizures, back pain, and short-term memory loss prevented him from working full-time (2E/2). However, the record established traumatic brain injury, seizures, bipolar disorder, mild neurocognitive disorder, and borderline intellectual functioning, as severe impairments, along with symptomology, but the record did not support the extent of the claimant's alleged functional limitations. Specifically, the claimant has a remote history of a traumatic brain injury and history of seizures but the record did not evidence significant functional limitations resulting from this remote medical history. For example, the record documented that the seizures were well-controlled with medication. In addition, the clinical findings from Dr. Wiersema supported limitations to a range of light work with standing/walking limited to a total of 4 hours in an 8-hour workday, along with postural and environmental limitations, no more than occasional talking, and simple unskilled work with simple decision making (3F).

(ECF No. 9, PageID.51-52, 54.)

And Plaintiff's counsel, in her disappointingly inadequate briefing, does not specifically argue that the ALJ's analysis of this medical evidence, or the other evidence in the record, is deficient, inaccurate, or in any way violative of the Social

14

Security Administration's (SSA's) own regulations, beyond simply implying that the existence of evidence showing the need for constant supervision should have led the ALJ to a different conclusion. Thus, although I acknowledge the compelling nature of such evidence, I cannot find that Plaintiff has met his burden of establishing entitlement to a more restrictive RFC. *Jordan*, 548 F.3d at 423 ("The claimant, however, retains the burden of proving her lack of residual functional capacity."); *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (the Court cannot "reconsider facts, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ"). *See also Henderson v. Comm'r of Soc. Sec.*, No. 14-12675, 2015 WL 2063096, at *2 (E.D. Mich. May 4, 2015) ("[A] plaintiff cannot simply claim that the ALJ erred while leaving it up to the Court to scour the record to support this claim.") (quotation marks and citation omitted).

### F.     Conclusion

Plaintiff has the burden of proof on statements of error. *Walters*, 127 F.3d at 529 ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). As Plaintiff acknowledges, "[j]udicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied." (ECF No. 13, PageID.461)

15

(citing *Rogers*, 486 F.3d at 241). Plaintiff has not shown legal error that would upend the ALJ's decision, and the ALJ's decision is supported by substantial evidence. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 13), **GRANT** Defendant's motion for summary judgment (ECF No. 14), and **AFFIRM** the Commissioner of Social Security's decision.

### III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: January 11, 2022

/s/ Anthony P. Patti
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE