UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JON ALAN LAPORTE, JR.**, <br><br> Plaintiff, <br><br> vs. <br><br> **COMMISSIONER OF SOCIAL SECURITY,** <br><br> Defendant. | 2:20-CV-12672-TGB-APP <br><br> **ORDER ADOPTING REPORT AND RECOMMENDATION (ECF NO. 16)** |

This matter is before the Court on Magistrate Judge Anthony P. Patti's January 11, 2022 Report and Recommendation (ECF No. 16), recommending that the Defendant's Motion for Summary Judgment (ECF No. 14) be granted, the Plaintiff's Motion (ECF No. 13) be denied, and the findings of the Commissioner be affirmed. The Court has reviewed Magistrate Judge Patti's Report and Recommendation, Plaintiff's objections, and the Commissioner's reply. ECF Nos. 18, 19. For the reasons set forth below, Plaintiff's objections are **OVERRULED**, and the Report and Recommendation is **ACCEPTED** and **ADOPTED** as the Court's findings of fact and conclusions of law. Consequently, the decision of the Commissioner denying Plaintiff's disability claim is **AFFIRMED**.

1

## I. BACKGROUND

Jon Laporte suffered a traumatic brain injury at the age of four when he was hit by a truck. He still experiences seizures, which are controlled by medication, and other residual impairments from the accident such as back pain. He received special education services from middle school onwards. He has largely worked in supervised vocational settings; he does have the ability to engage in many day-to-day functions such as personal hygiene, taking care of pets, using public transportation and riding his bike, and attending church. ECF No. 13, PageID.459-60; *see also* ALJ Decision, ECF No. 9, PageID.47.

He filed an application for child's insurance benefits on July 12, 2018 and for disability insurance benefits on September 18, 2018, alleging disability as of September 1, 1991. ALJ Decision, PageID.43. After both claims were denied, he requested a hearing before an administrative law judge (ALJ), which occurred on January 31, 2020. The ALJ found that he was not disabled prior to the age of 22 nor through September 30, 2018 (his last date of insurance coverage) and therefore ineligible for benefits. *Id.* at PageID.44. After the Social Security Appeals Council declined to review his claim, Mr. Laporte sought judicial review on September 30, 2020. ECF No. 1. Parties timely filed cross motions for summary judgment. ECF Nos. 13, 14. Judge Patti issued a Report and Recommendation resolving the motions. ECF No. 16. Mr. Laporte filed

2

two Objections (ECF No. 18), to which the Commissioner responded (ECF No. 19). These issues are now before the Court.

## II. STANDARD OF REVIEW

Either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the report and recommendation. 28 U.S.C. § 636(b)(1). Objections must cite the specific portion of the report and recommendation to which they pertain.

This Court must conduct a de novo review (as if it were considering the issues for the first time) of the parts of a report and recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id*.

For any parts of the report and recommendation reviewed de novo, the Court's judicial review is nevertheless circumscribed: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."[1] *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is not a high standard, requiring "more than

---

[1] The ALJ's decision stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

### III. ANALYSIS

Mr. Laporte makes two Objections: (1) that the ALJ's Residual Functional Capacity (RFC) determination did not take into account the evidence presented that Plaintiff needs 24/7 supervision, and (2) that it was legal error to rely on the testimony of the Vocational Expert at the hearing when the hypothetical provided to the Vocational Expert did not include a limitation of 24/7 supervision. These essentially collapse into one objection: that the ALJ's RFC should have included a limitation indicating that Mr. Laporte requires 24/7 supervision.

Mr. Laporte does not identify legal error committed by the ALJ; rather, his objection is to the way the ALJ evaluated the record. But the Court cannot re-weigh the evidence at this stage; rather the question is whether the ALJ's conclusion is "supported by substantial evidence," which has already been defined as "more than a scintilla of evidence but less than a preponderance." *Rogers*, 486 F.3d at 241. If so, even if the ALJ *could* have come to a different conclusion based on the evidence presented, or even if the Court does not agree with the ALJ's conclusion, the Court is not permitted to overturn it. *Id.*

There is evidence in the record regarding supervision needs. An outpatient comprehensive evaluation from 2006 indicated that "Jon currently requires adult supervision at all times to provide structure and

4

to maintain safety. He requires a responsible adult in-home over night. This is not expected to change with maturity." Clinical Notes, Mary Free Bed Hospital Pediatric Brain Injury Program Evaluation, ECF No. 9, PageID.390. Plaintiff's physiatrist and PCP Dr. David Wiersma indicated at a visit in 2016 that he "will continue to require 24-hour supervision," and indicated a need for "continuous" supervision at several other visits. ECF No. 9, PageID.400-20.[2]

However, there is *also* evidence in the record that Plaintiff's need for supervision is not so severe: he has had at least two evaluations that have not mentioned the need for 24/7 supervision. *See* State Evaluation of Dr. Nancy Gardner, ECF No. 9, PageID.436-440; Medical Evaluation of Dr. David Hill, ECF No. 9, PageID.431-32 ("MER and other evidence indicates that the claimant *may* have a Mild Neurocognitive Disorder that limits his ability to perform work functioning on a consistent basis and *may* limit his ability to live in the community independently. MER is insufficient to assess his ongoing mental and cognitive work functioning.") (emphasis added). Additionally, the record has ample evidence of the various activities that Plaintiff *is* able to engage in without supervision. ECF No. 9, PageID.50 (noting Plaintiff's hearing testimony that he can "take out the trash, bathe himself, dress himself,

---

[2] Plaintiff's Objection also references a letter from his case manager indicating that he does not believe Plaintiff can ever engage in "full-time competitive employment." ECF No. 9, PageID.422. But this letter is largely conclusory and does not directly speak to the issue of supervision.

clean his own room, watch TV, play video games, use his tablet, use coloring books, play with the dogs, listen to music, . . . make simple sandwiches and use the microwave, . . . [Plaintiff went] to stores, relatives' homes, the grocery stores, bowled in the league, rode his bike with friends, and rode his bike for 3-10 miles when camping.").

The remaining question, then, is whether the ALJ reviewed each of these various sources of information and came to a reasoned decision as to which he credited and which he did not when determining Plaintiff's RFC. The record indicates that he did: the hearing decision references all four of the above sources as well as Plaintiff's hearing testimony (ECF No. 9, PageID.51-53), and specifically mentions Plaintiff's claim at his hearing that he needs constant supervision (ECF No. 9, PageID.50).[3] The ALJ finds "the claimant's statements about the intensity, persistence, and limiting effects of his symptoms . . . inconsistent with the overall record," and notes which symptom descriptors are well supported by the record. *Id*. This analysis leads to a final RFC determination that does not include a 24/7 supervision restriction. This particular aspect of the RFC is supported by substantial evidence in the record; the Court cannot disturb it, even if there is also enough evidence in the record to reach the opposite conclusion.

---

[3] In particular, there is a thorough treatment of several years of medical records from Dr. Wiersma, indicating the ALJ would have reviewed his statements regarding supervision. ECF No. 9, PageID.52.

The Court acknowledges that Mr. Laporte had a serious accident as a child and that it continues to affect his day-to-day life. But the Court's review is limited to issues of incorrect application of the law or insufficient factual evidence, and Mr. Laporte's Objections do not meet that standard.

## CONCLUSION

For all of the above reasons, the Court hereby **ACCEPTS AND ADOPTS** Magistrate Judge Morris' Report and Recommendation (ECF No. 19) as this Court's findings of fact and conclusions of law. Plaintiff's motion for summary judgment (ECF No. 14) is **DENIED**, Defendant's motion for summary judgment (ECF No. 17) is **GRANTED**, and the findings and conclusions of the Commissioner are **AFFIRMED**.

**IT IS SO ORDERED** this 24th day of February, 2022.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge